Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD BURKE, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| PACIFIC MERCANTILE BANCORP, DENIS P. KALSCHEUR, JAMES F. DEUTSCH, BRAD R. DINSMORE, MANISH DUTTA, SHANNON F. EUSEY, MICHAEL P. HOOPIS, ANNE MCCALLION, MICHELE S. MIYAKAWA, DAVID J. MUNIO, and STEPHEN P. YOST, | |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Richard Burke ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## <u>NATURE OF THE ACTION</u>

1.      This is an action against Pacific Mercantile Bancorp ("Pacific Mercantile," "PMB," or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for

1

their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Pacific Mercantile and Banc of California, Inc. ("BOC").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.[1]

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

---

[1] For example, the Company reportedly participated in conferences in New York City in recent years.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Pacific Mercantile common stock.

7.      Defendant Pacific Mercantile operates as a holding company for the Pacific Mercantile Bank that provides a range of commercial banking products and services to middle-market businesses, professional firms, and individuals. The Company is incorporated in California. The Company's common stock trades on the NASDAQ under the ticker symbol, "PMBC."

8.      Defendant Denis P. Kalscheur ("Kalscheur") is Chairman of the Board of the Company.

9.      Defendant James F. Deutsch ("Deutsch") is a director of the Company.

10.      Defendant Brad R. Dinsmore ("Dinsmore") is President, Chief Executive Officer, and a director of the Company.

11.      Defendant Manish Dutta ("Dutta") is a director of the Company.

12.      Defendant Shannon F. Eusey ("Eusey") is a director of the Company.

13.      Defendant Michael P. Hoopis ("Hoopis") is a director of the Company.

14.      Defendant Anne McCallion ("McCallion") is a director of the Company.

15.      Defendant Michele S. Miyakawa ("Miyakawa") is a director of the Company.

16.      Defendant David J. Munio ("Munio") is a director of the Company.

17.      Defendant Stephen P. Yost ("Yost") is a director of the Company.

18.      Defendants Kalscheur, Deutsch, Dinsmore, Dutta, Eusey, Hoopis, McCallion, Miyakawa, Munio, and Yost are collectively referred to herein as the "Individual Defendants."

19.     Defendants Pacific Mercantile and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

20.     On March 22, 2021, Pacific Mercantile and BOC announced that they had entered into a definitive agreement and plan of merger under which Pacific Mercantile would merge into BOC in an all-stock transaction. Under the terms of the definitive agreement, holders of Pacific Mercantile common stock will receive 0.5 shares of BOC common stock for each share of Pacific Mercantile common stock they own. Existing BOC stockholders would own approximately 81% of the outstanding shares of the combined company and Pacific Mercantile shareholders are expected to own approximately 19%.

21.     The press release announcing the Proposed Transaction states, in pertinent part:

**Banc of California, Inc. to Acquire Pacific Mercantile Bancorp, Creating a $9.5 Billion Business Banking Franchise in Southern California**

**Highlights of the Announced Transaction:**

- **Attractive economics with 12.9% EPS accretion in 2022 and 2.3 year tangible book value earnback period**
- **Complementary commercial banking business models with opportunity to expand relationships with Southern California clients**
- **Increases noninterest-bearing deposits from 26% to 30% of total deposits**
- **100% overlap with all acquired branches within two miles of existing BANC branches**

March 22, 2021 05:14 PM Eastern Daylight Time

SANTA ANA, Calif.--(BUSINESS WIRE)--Banc of California, Inc. (NYSE: BANC) (the "Company", "Banc of California", "we", "us" or "our"), the holding company of Banc of California, N.A., and Pacific Mercantile Bancorp (NASDAQ: PMBC) ("Pacific Mercantile"), the holding company of Pacific Mercantile Bank, today announced they have entered into a definitive agreement and plan of merger under which Pacific Mercantile will merge into Banc of California in an all-stock

transaction valued at approximately $235 million, or $9.77 per share, based on the closing price for Banc of California's common stock of $19.54 as of March 22, 2021. Banc of California expects the transaction to be 12.9% accretive to EPS in 2022 with a 2.3 year earnback period to tangible book value per share based on a conservative and achievable cost savings estimate of approximately 35%.

Pacific Mercantile Bancorp is a commercial bank headquartered in Costa Mesa, California with $1.6 billion in total assets, $1.2 billion in gross loans, and $1.4 billion in total deposits as of December 31, 2020. Pacific Mercantile had $229.7 million in Paycheck Protection loans outstanding at December 31, 2020. Pacific Mercantile operates seven banking offices, including three full service branches, located throughout Southern California. The transaction will increase Banc of California's total assets to approximately $9.5 billion on a pro forma basis as of December 31, 2020.

Jared Wolff, President and Chief Executive Officer of Banc of California, commented, "We are excited to welcome Pacific Mercantile's clients and colleagues into our banking family. Pacific Mercantile's talented team has built an attractive roster of operating company clients, and we look forward to serving them with high-touch relationship banking."

"Pacific Mercantile is a strong strategic fit for Banc of California," continued Mr. Wolff. "Their size, business focus, and deposit profile perfectly align with our existing operations, and will accelerate our growth and operating scale in key markets. Our similar market footprint, corporate cultures, and commitment to helping our clients succeed should lead to a smooth and successful transaction and integration. We believe the compelling economics of the transaction will deliver value for both Banc of California and Pacific Mercantile shareholders."

Pacific Mercantile President and Chief Executive Officer Brad R. Dinsmore added, "Banc of California is a great merger partner for Pacific Mercantile given our shared focus on business and relationship banking. Like Pacific Mercantile, Banc of California has become an attractive choice for small- and middle-market operating companies with a strong emphasis on service and solutions. Our customers will benefit from the greater range of services, capital and resources the combined company will be able to offer, while they receive the same high quality, personalized service they have always enjoyed."

### *Transaction Details*

Under the terms of the definitive agreement, which was approved by the Board of Directors of both companies, holders of Pacific Mercantile common stock will receive 0.5 shares of Banc of California common stock for each share of Pacific Mercantile common stock they own.

Existing Banc of California stockholders will own approximately 81% of the outstanding shares of the combined company and Pacific Mercantile shareholders are expected to own approximately 19%.

The transaction is expected to close in the third quarter of 2021, subject to satisfaction of customary closing conditions, including regulatory approvals and shareholder approvals from Banc of California and Pacific Mercantile shareholders. Pacific Mercantile directors who own shares of Pacific Mercantile common stock and certain shareholders have entered into agreements with Banc of California pursuant to which they have committed to vote their shares of Pacific Mercantile common stock in favor of the transaction. Banc of California directors who own shares of Banc of California common stock and certain stockholders have entered into agreements with Pacific Mercantile pursuant to which they have committed to vote their shares of Banc of California common stock in favor of the transaction.

Piper Sandler & Co. acted as financial advisor to Banc of California in the transaction and delivered a fairness opinion to the Board of Directors of Banc of California. Sullivan & Cromwell LLP served as legal counsel to Banc of California. Keefe, Bruyette & Woods, Inc., *a Stifel Company*, acted as financial advisor to Pacific Mercantile and delivered a fairness opinion to the Board of Directors of Pacific Mercantile. Sheppard, Mullin, Richter & Hampton LLP served as legal counsel to Pacific Mercantile.

\*       \*       \*

### About Banc of California, Inc.

Banc of California, Inc. (NYSE: BANC) is a bank holding company with approximately $7.9 billion in assets and one wholly-owned banking subsidiary, Banc of California, N.A. (the "Bank") as of December 31, 2020. The Bank has 36 offices including 29 full-service branches located throughout Southern California. Through our dedicated professionals, we provide customized and innovative banking and lending solutions to businesses, entrepreneurs and individuals throughout California. We help to improve the communities where we live and work, by supporting organizations that provide financial literacy and job training, small business support and affordable housing. With a commitment to service and to building enduring relationships, we provide a higher standard of banking.

### About Pacific Mercantile Bancorp

Pacific Mercantile Bancorp is the parent holding company of Pacific Mercantile Bank, which opened for business March 1, 1999. Pacific Mercantile Bank, which is an FDIC insured, California state-chartered bank and a member of the Federal Reserve System, provides a wide range of commercial banking services to businesses, business professionals and individual clients. The Bank is headquartered in Orange County and operates a total of seven offices in Southern

California, located in Orange, Los Angeles, San Diego, and San Bernardino counties. The Bank offers tailored flexible solutions for its clients including an array of loan and deposit products, sophisticated cash management services, and comprehensive online banking services.

22.     On April 30, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

23.     The Registration Statement, which recommends that Pacific Mercantile shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Pacific Mercantile's and BOC's financial projections; (ii) the financial analyses performed by Pacific Mercantile's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving KBW.

24.     The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Recommendation of the PMB Board of Directors and Reasons for the Merger; and (ii) Opinion of PMB's Financial Advisor.

25.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Pacific Mercantile shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Pacific Mercantile's and BOC's Financial Projections**

26.     The Registration Statement omits material information concerning Pacific Mercantile's and BOC's financial projections.

27.     The Registration Statement provides that, in connection with KBW's fairness opinion, KBW considered, among other things:

- publicly available consensus "street estimates" of PMB, as well as assumed long-term PMB growth rates provided to KBW by PMB management, all of which information was discussed with KBW by PMB management and used and relied upon by KBW at the direction of such management and with the consent of the PMB board of directors;

- publicly available consensus "street estimates" of BOC, as well as assumed long-term BOC growth rates provided to KBW by BOC management, all of which information was discussed with KBW by BOC management and used and relied upon by KBW based on such discussions, at the direction of PMB management and with the consent of the PMB board of directors; and

- estimates regarding certain pro forma financial effects of the merger on BOC (including, without limitation, the cost savings and related expenses expected to result or be derived from the merger) that were prepared by, and provided to and discussed with KBW by, BOC management and that were used and relied upon by KBW based on such discussions, at the direction of PMB management and with the consent of the PMB board of directors.

28.     The Registration Statement, however, fails to disclose: (1) the publicly available consensus "street estimates" of Pacific Mercantile, as well as assumed long-term Pacific Mercantile growth rates provided to KBW by Pacific Mercantile management; (2) the publicly available consensus "street estimates" of BOC, as well as assumed long-term BOC growth rates provided to KBW by BOC management; (3) estimates regarding certain pro forma financial effects of the merger on BOC (including, without limitation, the cost savings and related expenses expected to result or be derived from the merger) that were prepared by, and provided to and discussed with KBW by, BOC management; (4) Pacific Mercantile's estimated calendar year 2021 earnings per share ("EPS"); and (5) Pacific Mercantile's estimated calendar year 2022 EPS.

29.     The disclosure of this information is material because it would provide the

Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

30.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2.   Material Omissions Concerning KBW's Analyses

31.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by KBW.

32.     With respect to KBW's "*PMB Selected Companies Analysis*," "*BOC Selected Companies Analysis*," and "*Selected Transactions Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of each company and transaction KBW observed in its analyses.

33.     The Registration Statement fails to disclose the following concerning KBW's "*Financial Impact Analysis*": (1) the closing balance sheet estimates as of September 30, 2021 for BOC and Pacific Mercantile; (2) the calendar year 2021 and 2022 EPS consensus "street estimates" for BOC and Pacific Mercantile; (3) the pro forma assumptions (including, without limitation, the cost savings and related expenses expected to result from the merger and certain purchase accounting and other merger-related adjustments and restructuring charges assumed with respect thereto) provided by BOC management; (4) the potential financial impact of the merger on

certain projected financial results of BOC; (5) the amount by which the merger could be accretive to BOC's estimated 2021 and 2022 EPS and dilutive to BOC's estimated tangible book value per share at closing as of September 30, 2021; and (6) each of BOC's tangible common equity to tangible assets ratio, Common Equity Tier 1 Ratio, Leverage Ratio and Tier 1 Capital Ratio at closing as of September 30, 2021, and BOC's Total Risk-Based Capital Ratio at closing as of September 30, 2021.

34.     The Registration Statement fails to disclose the following concerning KBW's "*PMB Dividend Discount Model Analysis*": (1) the consensus "street estimates" for Pacific Mercantile; (2) the long-term growth rates for Pacific Mercantile provided by Pacific Mercantile management; (3) the individual inputs and assumptions underlying the (i) discount rates ranging from 11.0% to 15.0%, and (ii) range of 11.0x to 15.0x Pacific Mercantile's estimated 2026 earnings; (4) the implied future excess capital available for dividends that Pacific Mercantile could generate over the period from December 31, 2020 through December 31, 2025 as a standalone company; (5) Pacific Mercantile's implied terminal value; and (6) the basis for KBW's assumption that Pacific Mercantile would maintain a tangible common equity to tangible assets ratio of 8.00% and would retain sufficient earnings to maintain that level.

35.     The Registration Statement fails to disclose the following concerning KBW's "*BOC Dividend Discount Model Analysis*": (1) the consensus "street estimates" for BOC; (2) the long-term growth rates for BOC provided by BOC management; (3) the individual inputs and assumptions underlying the (i) discount rates ranging from 9.0% to 13.0%, and (ii) range of 15.0x to 19.0x BOC's estimated 2026 earnings; (4) the implied future excess capital available for dividends that BOC could generate over the period from December 31, 2020 through December 31, 2025 as a standalone company; (5) BOC's implied terminal value; and (6) the basis

for KBW's assumption that BOC would maintain a tangible common equity to tangible assets ratio of 8.00% and would retain sufficient earnings to maintain that level.

36.     The Registration Statement fails to disclose the following concerning KBW's "*Pro Forma Dividend Discount Model Analysis*": (1) the consensus "street estimates" for BOC and Pacific Mercantile; (2) the long-term growth rates for BOC and Pacific Mercantile; (3) the pro forma assumptions (including, without limitation, the cost savings and related expenses expected to result from the merger and certain purchase accounting and other merger-related adjustments and restructuring charges assumed with respect thereto) provided by BOC management; (4) the individual inputs and assumptions underlying the (i) discount rates ranging from 9.0% to 13.0%, and (ii) range of 15.0x to 19.0x the pro forma combined entity's estimated 2026 earnings; (5) the future excess capital available for dividends that the pro forma combined entity could generate over the period from September 30, 2021 through December 31, 2025; (6) the pro forma combined entity's implied terminal value; and (7) the basis for KBW's assumption that the pro forma combined entity would maintain a tangible common equity to tangible assets ratio of 8.00% and would retain sufficient earnings to maintain that level.

37.     The valuation methods, underlying assumptions, and key inputs used by KBW in rendering its purported fairness opinion must be fairly disclosed to Pacific Mercantile shareholders. The description of KBW's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Pacific Mercantile shareholders are unable to fully understand KBW's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's

shareholders.

### 3.   Material Omissions Concerning KBW's Potential Conflicts of Interest

38.     The Registration Statement omits material information concerning potential conflicts of interest involving KBW.

39.     The Registration Statement provides that, "[i]n the two years preceding the date of its opinion, KBW provided investment banking and financial advisory services to BOC and received compensation for such services." The Registration Statement further provides that, "KBW acted as (i) joint dealer manager for BOC's August 2019 tender offer for depositary shares representing an interest in preferred stock, and (ii) sole book-running manager for BOC's October 2020 offering of fixed-to-floating rate subordinated notes."

40.     The Registration Statement, however, fails to disclose the amount of compensation KBW received or expects to receive for the services it provided to BOC within the past two years of the date of its fairness opinion.

41.     Disclosure of a financial advisor's compensation and potential conflicts of interest is necessary due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

42.     The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully

set forth herein.

44.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

45.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

46.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

47.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

48.     Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

49.     Plaintiff repeats and realleges each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

50.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

53.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including

counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demands a trial by jury.

Dated: May 6, 2021                              Respectfully submitted,

**HALPER SADEH LLP**

By: <u>/s/ Daniel Sadeh</u>
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*